IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SALVADOR H.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 22 C 7254 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff filed his application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§1381a, 1382c, over two and a half years ago in December 2020. (Administrative Record (R.) 216-21). He claimed that he had been disabled since January 1, 2016 (R. 160) due to: "bipolar disorder, HDAD, depression, insomnia, anxiety." (R. 247). Over the next two years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. *See* 20 C.F.R. §§404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g) on December 27, 2022, and the parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) on January 11, 2023. [Dkt. ##6, 7]. Plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

I.

A.

The plaintiff was born on August 9, 1976 (R. 216), and was just 39 years old when he claims he became unable to work. (R. 160). Aside from a brief stint in 2015 (R. 232), he hasn't worked in nearly 20 years. (R. 223-24, 228, 236). He has seen a mental healthcare provider regularly for the last couple of years but, aside from a hospitalization for suicidal ideation about five months before he applied for SSI, the mental status exams are, essentially, unremarkable.

On November 4, 2019, plaintiff reported that "sometimes I'm happy, sad, or upset." He was described as fidgety, giving one-word answers. (R. 432). Mental status exam was as follows: Mood: anxious; Affect: congruent, anxious, constricted; Sensorium: alert, attentive, clear; Process: able to abstract, goal-directed, logical; Thought & Perception: lucid; Intellectual Functioning: adequate fund of information, intact memory processes, oriented to person, oriented to place, oriented to time, oriented to situation, oriented to reality, average; Insight: fair; Judgment: fair. (R. 433). A month later, on December 9, 2019, plaintiff reported that he was better." (R. 428). Mental status exam was much the same: Mood: pleasant; Affect: congruent, constricted; Sensorium: alert, attentive, clear; Process: able to abstract, goal-directed, logical; Thought & Perception: lucid; Intellectual Functioning: adequate fund of information, intact memory processes, oriented to person, oriented to place, oriented to time, oriented to situation, oriented to reality, average; Insight: fair; Judgment: fair. (R. 429).

On February 7, 2020, the plaintiff said he was having some trouble with his ADHD medication in that it was causing him to feel fatigued. All his other medications working well. (R. 424). Once again, his metal status exam was essentially unremarkable: Mood: pleasant; Affect: congruent, constricted; Sensorium: alert, attentive, clear; Process: able to abstract, goal-directed,

logical; Thought & Perception: lucid; Intellectual Functioning: adequate fund of information, intact memory processes, oriented to person, oriented to place, oriented to time, oriented to situation, oriented to reality, average; Insight: fair; Judgment: fair. (R. 425). At his next session on March 6, 2020, plaintiff said his new medication was making him feel tired. (R. 420). Exam was basically unchanged: Mood: pleasant; Affect: congruent, constricted; Sensorium: alert, attentive, clear; Process: able to abstract, goal-directed, logical; Thought & Perception: lucid; Intellectual Functioning: adequate fund of information, intact memory processes, oriented to person, oriented to place, oriented to time, oriented to situation, oriented to reality, average; Insight: fair; Judgment: fair. (R. 421).

Plaintiff complained that he had trouble focusing at his next appointment on April 16, 2020. (R. 416). Still, his mood was pleasant; his affect was congruent, constricted; sensorium: alert, attentive, clear; Process: able to abstract, goal-directed, logical; Thought & Perception: lucid; Intellectual Functioning: adequate fund of information, intact memory processes, oriented to person, oriented to place, oriented to time, oriented to situation, oriented to reality, average; Insight: fair; Judgment: fair. (R. 417). On May 21, 2020, the plaintiff denied all symptoms other than feeling tired with low energy in the morning. (R. 414). Mood: "much better"; Affect: congruent, constricted; Sensorium: alert, attentive, clear; Process: able to abstract, goal-directed, logical; Thought & Perception: lucid; Intellectual Functioning: adequate fund of information, intact memory processes, oriented to person, oriented to place, oriented to time, oriented to situation, oriented to reality, average; Insight: fair; Judgment: fair. (R. 413).

It was about this time that the plaintiff had an alcohol relapse. On May 24, 2020, his girlfriend called paramedics because plaintiff was "endorsing suicidal ideations to her." At the

emergency room, the plaintiff denied that, although he conceded he had stopped taking his medications for two days. (R. 595). He denied alcohol use (R. 596), but blood work showed hypoglycemia and alcohol intoxication. (R. 606). Upon exam his affect was calm, cooperative and mood and affect normal; his appearance was appropriate; eye contact was good; his thought pattern was normal; his insight was appropriate; and his intellect was average. (R. 597). Upon discharge on May 28, 2020, psychiatric exam was as follows: Affect: labile; Mood: normal; Speech: normal; Sensorium: alert; Oriented to: person, place, situation and time; Cognition: attention normal; Memory; Problems: normal; Thought Process: intact; Judgement: impaired; Motivation: normal; Insight: marginal. (R. 608-09).

At his next regular session on June 15, 2020, plaintiff reported that he had been hospitalized for four days. (R. 408). Exam was as follows: Mood: "better, still depressed"; Affect: congruent, constricted; Sensorium: alert, attentive, clear; Process: able to abstract, goal-directed, logical; Thought & Perception: lucid; Intellectual Functioning: adequate fund of information, intact memory processes, oriented to person, oriented to place, oriented to time, oriented to situation, oriented to reality, average; Insight: fair; Judgment: fair. (R. 409). A month later on July 9, 2020, plaintiff said he was "doing pretty good" (R. 404). Mental status was again unremarkable: Mood: "pretty good"; Affect: congruent, constricted; Sensorium: alert, attentive, clear; Process: able to abstract, goal-directed, logical; Thought & Perception: lucid; Intellectual Functioning: adequate fund of information, intact memory processes, oriented to person, oriented to place, oriented to time, oriented to situation, oriented to reality, average; Insight: fair; Judgment: fair. (R. 405).

On August 18, 2020, plaintiff said he was depressed and edgy and anxious. (R. 400). Mental status exam was as follows: Mood: "edgy"; Affect: congruent, constricted; Sensorium: alert,

attentive, clear; Process: able to abstract, goal-directed, logical; Thought & Perception: lucid; Intellectual Functioning: adequate fund of information, intact memory processes, oriented to person, oriented to place, oriented to time, oriented to situation, oriented to reality, average; Insight: fair; Judgment: fair. (R. 401). On November 9, 2020, plaintiff reported that he was "irritable and depressed at times." Upon examination, his affect was congruent and constricted; Sensorium: alert, attentive, clear; Process: able to abstract, goal-directed, logical; Thought & Perception: lucid; Intellectual Functioning: adequate fund of information, intact memory processes, oriented to person, oriented to place, oriented to time, oriented to situation, oriented to reality, average; Insight: fair; Judgment: fair (R. 397). It was shortly thereafter that plaintiff filed his application for Supplemental Security income.

On December 17, 2020, plaintiff was described as stable. His main concern was sleep disturbances. (R. 394). He said his mood was "anxious." Mental status was as follows: Affect: congruent, constricted; Sensorium: alert, attentive, clear; Process: able to abstract, goal-directed, logical; Thought & Perception: lucid; Intellectual Functioning: adequate fund of information, intact memory processes, oriented to person, oriented to place, oriented to time, oriented to situation, oriented to reality, average; Insight: fair; Judgment: fair. (R. 393). On February 4, 2021, plaintiff denied depression, mood has been good, anxiety better. (R. 389). Mood: "stable"; Affect: congruent, constricted; Sensorium: alert, attentive, clear; Process: able to abstract, goal-directed, logical; Thought & Perception: lucid; Intellectual Functioning: adequate fund of information, intact memory processes, oriented to person, oriented to place, oriented to time, oriented to situation, oriented to reality, average; Insight: fair; Judgment: fair. (R. 390).

At his next session on April 12, 2021, plaintiff reported his mood as "stable." Mental status exam was as follows: Affect: congruent, constricted; Sensorium: alert, attentive, clear; Process: able to abstract, goal-directed, logical; Thought & Perception: lucid; Intellectual Functioning: adequate fund of information, intact memory processes, oriented to person, oriented to place, oriented to time, oriented to situation, oriented to reality, average; Insight: fair; Judgment: fair. Plaintiff's only complaint was that he was restless at times. (R. 465). On May 10, 2021, plaintiff again reported his mood as "stable." His mental status was reported as: Affect: congruent, constricted; Sensorium: alert, attentive, clear; Process: able to abstract, goal-directed, logical; Thought & Perception: lucid; Intellectual Functioning: adequate fund of information, intact memory processes, oriented to person, oriented to place, oriented to time, oriented to situation, oriented to reality, average; Insight: fair; Judgment: fair. (R. 461).

On April 13, 2021, state agency reviewing psychologist Dr. Tyrone Hollerauer opined that Plaintiff had mild limitations in understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting and managing himself. (R. 66). On August 19, 2021, state agency reviewing psychologist Dr. Jeanne Yakin concurred in that opinion. (R. 74-75). Perhaps not surprisingly, given the exam results in the record, neither reviewer thought the plaintiff had a severe impairment. (R. 66, 74-75).

**B.**

After an administrative hearing at which plaintiff, represented by counsel, testified, along with a vocational expert, the ALJ determined the plaintiff had the following severe impairments: "bipolar disorder; attention deficit hyperactivity disorder (ADHD); depression and anxiety." (R. 19). The ALJ said the plaintiff's hypertension and insomnia were well-controlled and caused no more

6

than minimal limitations. (R. 19). The ALJ then found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that the plaintiff had mild limitations in understanding, remembering or applying information and in adapting or managing oneself; and moderate limitations in concentrating, persisting or maintaining pace and in interacting with others. (R. 19-20).

  The ALJ then determined that the plaintiff had the residual functional capacity ("RFC") to perform work at all levels with the following additional limitations:

> the [plaintiff] can perform simple routine tasks and work with no production rate pace requirements. The [plaintiff] can have occasional interaction with coworkers and supervisors and no interaction with the public.

(R. 21). The ALJ then summarized the plaintiff's allegations regarding his limitations from his impairments, noting that he testified how his inability to focus or stay in one place for long prevented him from working. Plaintiff also claimed his mood was persistently depressed; it sometimes caused him to sleep all day, while on other days he was fine. Plaintiff added that he has racing thoughts and mood swing that caused him to snap for no reason. He had difficulty understanding instructions and questions and getting along with others. The ALJ then stated he found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 22).

  The ALJ then reviewed the medical evidence. He acknowledged that there was medical evidence from the period prior to the plaintiff's application for SSI but, explaining that benefits are

not payable prior to the date of application, he said he would not address the medical evidence that predates his application date in detail. The ALJ then noted that, at an exam the day after plaintiff filed his application, the plaintiff denied any symptoms of depression, he denied any difficulty concentrating and he denied any issues involving his sleep. The doctor noted plaintiff showed no signs of depression, anxiety or agitation. Physical exam was essentially normal. Less than a week later, the plaintiff reported to his psychiatrist that his irritability had improved but he was depressed at times. The doctor noted plaintiff's mood was irritable and depressed at times with a constricted affect, he was cooperative, polite, alert, attentive, and his thought process was logical and goal directed. Plaintiff was lucid and his memory was intact with no cognitive deficits. His insight and judgment were fair. Diagnosis was anxiety, bipolar disorder, alcohol abuse and attention deficit hyperactivity disorder. (R. 23).

Plaintiff saw his psychiatrist again in February 2021. Plaintiff said he was stressed, anxious, having interrupted sleep, but that his energy was good. The doctor noted his mood was anxious with a congruent and constricted affect. He was alert, attentive and his thought process was logical and goal directed. His memory was intact, insight and judgment were fair, and there were no cognitive deficits noted. The doctor's impressions were anxiety, bipolar disorder, alcohol abuse and attention deficit hyperactivity disorder. He reported that the plaintiff was stable, and prescribed a higher dose of Hydroxyzine for the sleep disturbance, continued his Guanfacine, Trazodone, Lamotrigine and Sertraline, and continued Naltrexone for alcohol use disorder. (R. 23).

At his next physical exam in February 2021, plaintiff reported some abdominal pain. Physical exam was normal. Mental status exam showed no depression, anxiety, or agitation; insight and judgment were intact. Exam results remained unremarkable in March 2021 and in June 2021.

(R. 23-24).

At a psychiatric follow-up in April 2021, plaintiff reported that he had been doing well and that while his mood was low at times, the episodes were brief. He was sleeping well and denied any issues with anxiety. The doctor described plaintiff's affect as constricted with no abnormalities in any other area. His memory, thought process, insight, judgment and intellectual functioning were all noted as intact or normal. Medications were continued, and mental status exam was unchanged at the next session in May 2021. (R. 24).

Physical exam was again unremarkable in October 2021. Plaintiff denied any issues concentrating, symptoms of depression, or difficulty sleeping. The doctor noted that he showed no signs of depression, anxiety, or agitation and that his judgment and insight were intact. Exam was essentially unchanged again in February 2022. (R. 24).

The ALJ then moved on to the medical opinions in the record. The ALJ found the opinion from the state agency reviewing physician that the plaintiff had no severe physical impairment to be persuasive. The ALJ explained that it was well supported with a narrative explanation and consistent with the medical evidence which consistently showed no physical abnormalities after plaintiff's application date. The ALJ found that the opinions from the state agency psychological reviewers "that the claimant's mental impairments are not persuasive." (R. 25). The ALJ allowed that the opinions were well-supported with narrative explanations and were consistent with the mental status exams in the record which consistently showed no cognitive, attention, thought process, memory, or communication deficits despite his mood issues since his application date. But the ALJ also noted that the record showed plaintiff's mood was depressed at times and his affect was constricted. As such, the ALJ gave the plaintiff "the full benefit of the doubt in connection with his statements that

9

he had difficulty interacting with others and that he had difficulty concentrating or maintaining his attention in assessing his residual functional capacity. (R. 25).

Finally, the ALJ noted that plaintiff had no past relevant work. (R. 26). The ALJ then relied on the testimony of the vocational expert to find that there were jobs in the national economy that plaintiff could still perform. Examples of such jobs included: cleaner II (D.O.T. # 919.687-014; 51,300 jobs nationally); lab equipment cleaner (D.O.T. # 381.687-022; 25,800 jobs nationally); and sweeper/cleaner (D.O.T. # 389.683-010; 15,500 jobs nationally). (R. 27). Accordingly, the ALJ found the plaintiff not disabled and not entitled to benefits under the Act. (R. 28).

## II.

The court's review of the ALJ's decision is "extremely limited." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). If the ALJ's decision is supported by "substantial evidence," the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). The "substantial evidence" standard is not a high hurdle to negotiate. *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019); *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). Indeed, it may be less than a preponderance of the evidence, *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir.2007), and is only that much "evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). To determine whether "substantial evidence" exists, the court reviews the record as a whole, but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving debatable evidentiary conflicts, or determining credibility. *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir.

10

2021). Where reasonable minds could differ on the weight of evidence, the court defers to the ALJ. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021); *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020); *see also Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)("... the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."); *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)("The substantial-evidence standard ... presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts.").

But, in the Seventh Circuit, the ALJ also has an obligation to build what is called an "accurate and logical bridge" between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). The Seventh Circuit has explained that, even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that "logical bridge." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)("... we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *see also Jarnutowski*, 48 F.4th at 774 ("... the Commissioner argues, we should affirm the ALJ's decision because it was supported by the evidence. Possibly. But we cannot reach that conclusion from the ALJ's analysis."). *But see, e.g., Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018)("But we need not address either of those issues here because, even if [plaintiff] were

correct on both counts, we may affirm on any basis appearing in the record,...."); *Steimel v. Wernert*, 823 F.3d 902, 917 (7th Cir. 2016)("We have serious reservations about this decision, which strikes us as too sweeping. Nonetheless, we may affirm on any basis that fairly appears in the record."); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012)("[District court] did not properly allocate the burden of proof on the causation element between the parties,...No matter, because we may affirm on any basis that appears in the record.").

Of course, this is a subjective standard, and a lack of predictability comes with it for ALJs hoping to write opinions that stand up to judicial review. One reviewer might see an expanse of deep water that can only be traversed by an engineering marvel like the Mackinac Bridge. Another might see a trickle of a creek they can hop across with barely a splash.[2] But, the Seventh Circuit has also called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). All ALJs really need to do is "minimally articulate" their reasoning. *Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985).[3]

---

[2] By way of example, in the Seventh Circuit's ruling in *Jarnutowski*, 48 F.4th 769, two judges on the panel felt the ALJ had not adequately explained aspects of her reasoning while a third judge, dissenting, thought she had. The Magistrate Judge who reviewed the ALJ's decision at the district court level also felt the ALJ had adequately explained her reasoning. *Donna J. v. Saul*, No. 19 C 2957, 2021 WL 2206160, at *8 (N.D. Ill. June 1, 2021).

[3] Prior to *Sarchet*'s "logical bridge" language, the court generally employed the phrase "minimal articulation" in describing an ALJ's responsibility to address evidence. *Zalewski v. Heckler*, 760 F.2d 160, 166 (7th Cir. 1985)(collecting cases). The court's focus was on whether an ALJ's opinion assured the reviewing court that he or she had considered all significant evidence of disability. In *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir. 1984), for example, the court "emphasize[d] that [it] d[id] not require a written
(continued...)

**III.**

The plaintiff raises two arguments in favor of remanding this case for another round of administrative proceedings. First, he complains that the ALJ failed to consider evidence that he was hospitalized for suicidal ideation approximately five months prior to his application date. And, second, the plaintiff contends that, in rejecting all of the medical opinion evidence, the ALJ impermissibly based his RFC finding solely on his own lay judgment. Any other arguments the plaintiff might have presented are deemed waived. *Milhem v. Kijakazi*, 52 F.4th 688, 693 (7th Cir. 2022); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).

---

³(...continued)
evaluation of every piece of testimony and evidence submitted" but only "a minimal level of articulation of the ALJ's assessment of the evidence...in cases in which considerable evidence is presented to counter the agency's position." *Zblewski*, 732 F.2d at 79. In *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985), the court rejected a plaintiff's argument that an ALJ failed to adequately discuss his complaints of pain and was more explicit about how far ALJs had to go to explain their conclusions:

> We do not have the fetish about findings that [the plaintff] attributes to us. The court review judgments, not opinions. The statute requires us to review the quality of the evidence, which must be "substantial," not the quality of the ALJ's literary skills. The ALJs work under great burdens. Their supervisors urge them to work quickly. When they slow down to write better opinions, that holds up the queue and prevents deserving people from receiving benefits. When they process cases quickly, they necessarily take less time on opinions. When a court remands a case with an order to write a better opinion, it clogs the queue in two ways—first because the new hearing on remand takes time, second because it sends the signal that ALJs should write more in each case (and thus hear fewer cases).
>
> The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do....This court insists that the finder of fact explain why he rejects uncontradicted evidence. One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant. That is the reason the ALJ must mention and discuss, however briefly, uncontradicted evidence that supports the claim for benefits.

*Stephens*, 766 F.2d at 287 (citations omitted). Much more recently, the Seventh Circuit explained that "the 'logical bridge' language in our caselaw is descriptive but does not alter the applicable substantial-evidence standard." *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021).

13

**A.**

The problem that the plaintiff says he has with the ALJ's decision is that the ALJ said:

> The record indicates that the claimant has a history of treatment that predates his application date, November 5, 2020 (Ex. 1F; 8F; 1D). However, Supplemental Security Income benefits are not payable prior to the date of application. Therefore, while I acknowledge the claimant's history of treatment, this decision will not address the medical evidence that predates his application date in detail.

(R. 22). But, after review of the record, as detailed here and in the ALJ's opinion, the problem the plaintiff actually has is that, other than the four-day hospitalization several months before he applied for SSI, the record overwhelmingly supports the ALJ's decision to find him not disabled. So, the plaintiff wagers all on those few pages of evidence and one followup and essentially ignores the balance of the three-hundred-page medical record. [Dkt. # 14, at 7-8].

As the ALJ explained, Supplemental Security Income benefits are not payable until the month following the application filing date, see 20 C.F.R. § 416.335, and so any disabilities before December 2020 are irrelevant to plaintiff's eligibility. *Davenport v. Berryhill*, 721 F. App'x 524, 526 (7th Cir. 2018); *Perkins v. Chater*, 107 F.3d 1290, 1295 (7th Cir. 1997). That does not mean, of course, that evidence predating the application date is necessarily irrelevant. Indeed, the Commissioner's regulations tell applicants that the agency "will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application." 416.912(b)(1). But the ALJ didn't say the evidence predating the application was irrelevant. He said he acknowledged that evidence but would not address it in detail.

14

Now, the plaintiff can be forgiven for perhaps not taking the ALJ at his word, because the ALJ made no further mention of the out-of-date treatment records. But a reviewing court is charged with taking a commonsensical view of the ALJ's decision – and or the record – and reading it as a whole. In this regard, it has to be recalled that the plaintiff has the burden of establishing disability with medical evidence. *Durham v. Kijakazi*, 53 F.4th 1089, 1096 (7th Cir. 2022); *Gedatus*, 994 F.3d at 905. Here, the only portions of the record the plaintiff identifies as showing his depression was of disabling severity, *see Kaplarevic v. Saul*, 3 F.4th 940, 943 (7th Cir. 2021)(it is up to the plaintiff "to identify the portions of the medical records that he believed supported various of [his] allegations."); *Karr*, 989 F.3d at 513 (7th Cir. 2021)(plaintiff must "identify[ ] ... objective evidence in the record" that []he is disabled), cover a one- or, at most, two-month period in May and June of 2020. That's not enough when viewed in the context of the balance of the medical record. Indeed, even if, for the sake of argument, one accepts that plaintiff was disabled at that point, that's not even close to "a disability for a continuous period of twelve or more months . . . ." *Combs v. Kijakazi*, 69 F.4th 428, 434 (7th Cir. 2023).

The evidence immediately following that one-to-month period, as already discussed, consists of one unremarkable mental status examination after another. Month after month with rare exceptions, plaintiff denies any issues with concentration. He is alert and attentive. His thought processes are lucid and logical and goal-directed. His judgment and insight are fair. None of those findings suggest the plaintiff is suffering from a disability, and plaintiff fails to offer any explanation of how they do. Plaintiff does mention his reports that he was feeling anxious, or edgy, or restless, or down. But what limitations do those feelings place on one's ability to work? Again, it is up to the plaintiff to link the medical evidence to some specific limitation. *Gedatus*, 994 F.3d at 905

15

("Besides, [plaintiff] has not pointed to any medical opinion or evidence to show [his impairment] caused any specific limitations."); *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("[E]ven if the ALJ's RFC assessment were flawed, any error was harmless" because "[i]t is unclear what kinds of work restrictions might address [claimant's] limitations ... because he hypothesizes none" and "the medical record does not support any.").

At bottom, the court has to agree with the Commissioner's lawyer: what the plaintiff is doing here is exactly the kind of cherry-picking plaintiffs often accuse ALJs of doing. Just as it doesn't work for ALJs, it doesn't work for plaintiffs either. *See, e.g., Javier G. v. Kijakazi*, No. 22 C 3086, 2023 WL 2587812, at *4 (N.D. Ill. Mar. 21, 2023); *Jared H. v. Kijakazi*, No. 21 C 4587, 2022 WL 4367203, at *13 (N.D. Ill. Sept. 21, 2022); *Treva L. v. Kijakazi*, No. 21 C 5199, 2022 WL 3700829, at *6 (N.D. Ill. Aug. 26, 2022). As already explained, the substantial evidence standard is not a high hurdle to negotiate. The ALJ easily managed to clear it here by tethering his decision to the vast majority of the evidence which was made up, again, of unremarkable mental status examination findings.

**B.**

The plaintiff's other argument hardly merits discussion and suggests that, perhaps, this was a case of grasping at straws. The plaintiff complains that the ALJ rejected the opinions of the two reviewing doctors that his mental impairment was not severe and instead found that it was severe and left the plaintiff with mild limitations in understanding, remembering, and applying information and adapting and managing himself and moderate limitations in interacting with others and concentrating, persisting, and maintaining pace. The plaintiff's issue seems to be that the ALJ didn't provide a sufficient narrative explanation of how he got from the evidence to a limitation to unskilled

16

work to account for concentration limitations, and a limitation in social interaction to account for mood swings and difficulty getting along with others. [Dkt. #14, at 9-11].

The argument is a bit difficult to grasp. What the ALJ did was along the lines of giving the plaintiff the "benefit of the doubt," as the ALJ said. Clearly, the plaintiff isn't grateful, but that's not a reason to overturn the ALJ's opinion. *See Taylor v. Kijakazi*, No. 21-1458, 2021 WL 6101618, at *3 (7th Cir. Dec. 22, 2021)("If anything, our review of the record shows that the ALJ gave Taylor the benefit of the doubt."); *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) ("The ALJ canvassed the medical evidence and fully accounted for [plaintiff's] physical and mental impairments"... gave [plaintiff] 'the benefit of the doubt' ...."); *Harris-Patterson v. Saul*, 835 F. App'x 130, 131 (7th Cir. 2021). Frankly, so what if the ALJ added an additional limitation not directly tied to the medical evidence? As former Magistrate Judge – now District Court Judge – Iain Johnston aptly put it, it's a "quizzical argument." *Karla J.B. v. Saul*, No. 19 CV 50019, 2020 WL 3050220, at *4 (N.D. Ill. June 8, 2020)("Essentially, Plaintiff argues the ALJ erred by placing more—not fewer—restrictions on Plaintiff's RFC. Again, this is a quizzical argument."); *see also Jason B. v. Kijakazi*, No. 22 C 1850, 2023 WL 1992188, at *7 (N.D. Ill. Feb. 14, 2023); *Anthony L. v. Kijakazi*, No. 20 CV 5184, 2022 WL 2237141, at *4 (N.D. Ill. June 22, 2022); *Amy V. v. Kijakazi*, No. 22 C 00009, 2022 WL 17082527, at *10 (N.D. Ill. Nov. 18, 2022).

Moreover, the ALJ offered a fairly thorough explanation of why he felt plaintiff's condition was more severe than the state agency reviewing psychologists felt:

> I have considered the opinions provided by the state agency psychological consultants, Dr. Tyrone Hollerauer and Dr. Jeanne Yakin (Ex. 1A; 4A). I find their opinions that the claimant's mental impairments are not persuasive. The state agency psychiatric consultants' opinions were well supported with narrative explanations explaining the basis for their conclusions (Ex. 1A; 4A). In addition, their opinions were consistent with the mental status exams in the record which showed the

claimant had mood abnormalities and a constricted affect, but also consistently showed the claimant had no cognitive, attention, thought process, memory or communication deficits despite his mood issues since his application date (Ex. 1F/5-14, 26, 34, 40, 44; 4F/20; 5F/4; 6F/9). However, the record does show his mood was depressed at times and his affect was constricted (Id.). In addition, I have given the claimant the full benefit of the doubt in connection with his statements that he had difficulty interacting with others and that he had difficulty concentrating or maintaining his attention in assessing his residual functional capacity. Therefore, I find the claimant's mental impairments are severe and find the state agency psychological consultants' opinions are not persuasive.

(R. 25). When ALJs determine how much weight to give a medical opinion, they need only provide a minimal articulation of their reasoning. *Grotts*, 27 F.4th at 1276; *Deloney v. Saul*, 840 F.Appx. 1, 4 (7th Cir. 2020). The ALJ did at least that much here in deciding to give the plaintiff the benefit of the doubt in terms of limitations due to his mental impairment. *See, e.g., Gedatus*, 994 F.3d at 901 (". . . true, the record contains evidence that could be construed as favorable to [plaintiff]. But the ALJ noted some of that evidence and sided with h[im] to a degree by determining []he had severe impairments and needed some limitations . . . ."). The ALJ's summary of plaintiff's exam results was accurate and the extent that a medical opinion is consistent with the medical record is an important consideration when evaluating a medical opinion. *See, e.g., Albert*, 34 F.4th at 614 ("... the 'most important factors' are a medical opinion's 'supportability' and 'consistency' with the evidence in the record."); *Grotts*, 27 F.4th at 1277 (in rejecting doctor's opinion, ALJ explained why it is inconsistent with the medical evidence). So, it's not clear what more the plaintiff wants from the ALJ in this regard. Surely, the plaintiff does not want a remand of this case so the ALJ can accept the state agency reviewers' opinions that he has no severe impairment.

The plaintiff also, rather briefly, makes an "evidentiary deficit" argument, which plaintiffs advance from time to time when an ALJ fails to adopt any medical opinion as a basis for an RFC

finding.[4] But, "the determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014). As such, an "ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions any of the . . . physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). It is enough that the ALJ "weigh[ed] the evidence and conclude[d] that the record did not support a determination that [plaintiff] could not work." *Vang v. Saul*, 805 F. App'x 398, 401 (7th Cir. 2020)(rejecting "evidentiary deficit" argument). Here, again, that evidence depicted a patient who was alert and attentive, whose thought processes were lucid, logical, and goal-directed, whose judgment and insight were fair, and who often denied issues with concentration.

Similarly, the ALJ provided an adequate narrative explanation of why the limitations the ALJ crafted accounted for the plaintiff's deficiencies. Along with a thorough discussion of the relevant medical evidence[5], the ALJ explained:

> The [plaintiff's] residual functional capacity accounts for his ADHD and reports of difficulty maintaining his attention and concentration due to his mental impairments by limiting him to work that involves only simple, routine tasks that are not performed at a production rate pace. The [plaintiff's] residual functional capacity accounts for his reports of mood swings and difficulty getting along with others by limiting him to work with only occasional interaction with coworkers and supervisors and no interaction with the public.

---

[4] The genesis of the "evidentiary deficit" argument seems to have been *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010), where the court remanded because, without the opinions from physicians, the rest of the record simply did not support the ALJ's finding that the plaintiff could "stand or walk for six hours" because plaintiff walked with a limp and the assistance of a cane, had decreased balance/coordination, and difficulty with activities of daily living. Here, conversely, the record – essentially unremarkable mental status exams – does support the ALJ's finding that the plaintiff is not disabled.

[5] The plaintiff also seems to briefly complain that the ALJ only summarized the medical record. [Dkt. #14, at 11]. But such summaries are, of course, appropriate. *Grotts*, 27 F.4th at 1278; *Gedatus*, 994 F.3d at 901. "And if []he is complaining that the ALJ's summary was a partial summary of select evidence, that is equally unavailing because all summaries must be partial and selective. *Gedatus*, 994 F.3d at 901; *see also Grotts*, 27 F.4th at 1278–79.

(R. 26). It's fairly easy to follow the ALJ's reasoning. Moderate limitations – here, in concentration and interacting with others – mean a plaintiff's abilities in those areas are "fair." A "moderate limitation" is defined by regulation to mean that functioning in that area is "fair." *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021). As such, it seems consistent with the limitations the ALJ added to his RFC finding. And, in any event, all that is necessary is that the reviewing court is satisfied that the ALJ built an accurate and logical bridge from the evidence to his conclusion. *Jarnutowski*, 48 F.4th at 774; *Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018) (quotation omitted). The question is whether the ALJ's analysis says enough to enable review of whether the ALJ considered the totality of a claimant's limitations. *Jarnutowski*, 48 F.4th at 774; *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). In this case, the answer is "yes."

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for summary judgment [Dkt. #13] is denied, the defendant's motion for summary judgment [Dkt. #20] is granted, and the ALJ's decision is affirmed.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 8/7/23